**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FIDEL SOSA MARTINEZ** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 12-4348** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security** | : | |

## MEMORANDUM OPINION

Savage, J.  May 30, 2013

In this appeal from a denial of Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, the plaintiff Fidel Sosa Martinez requests review of the Administrative Law Judge's ("ALJ") decision to deny him benefits.[1] He contends the ALJ failed to: (1) properly evaluate and consider the opinions of examining psychologist-experts; (2) properly "combine" Martinez's limitations at steps three through five of the sequential evaluation process; (3) properly evaluate Martinez's subjective complaints of pain; and (4) include all of Martinez's limitations in the hypothetical posed to the vocational expert because it was based on a deficient residual functional capacity.

We conclude that the ALJ did not adequately explain why she accorded more weight to the opinion of a non-examining, non-treating psychologist than to the opinions of a psychologist who personally evaluated Martinez and another psychologist who treated him. Also, we find that the ALJ did not discuss why the claimant's combined

---

[1] Although our Procedural Order only directed plaintiff to file a brief and reply in support of his challenge to the Commissioner's decision denying benefits, plaintiff has also attached to his brief a "Motion in Support of Request for Review" (Doc. 9). Since plaintiff's motion was filed under Fed. R. Civ. P. 56, see Pl.'s Mot., it is referred to as a motion for summary judgment.

impairments did not meet or equal a listing under 20 C.F.R. Part 404, Subpart P, App. 1. Therefore, we shall remand the case to the Commissioner.

## Background and Procedural History

On July 9, 2009, Martinez, who was then fifty-two, applied for SSI benefits, alleging disability as of February 16, 2007 due to, among other things, severe back pain and major depression. After his application was denied, Martinez timely requested a hearing before an ALJ. Following a hearing held on April 8, 2010, at which Martinez was represented by counsel, the ALJ determined that Martinez had severe impairments, including degenerative disc disease of the lumbar spine, chronic prostatitis, and major depression. She concluded these impairments did not preclude him for performing light duty work. Relying upon a vocational expert's opinion, she then determined that there were jobs available in the national economy for persons with Martinez's physical and vocational characteristics. Accordingly, on January 4, 2011, the ALJ concluded that Martinez was not "disabled."

On June 25, 2012, the Appeals Council denied Martinez's request for review, making the ALJ's decision final. Martinez then filed this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision.

## ALJ Findings

The ALJ made the following findings in her January 4, 2011 decision:

1. The claimant has not engaged in substantial gainful activity since July 9, 2009, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, chronic prostatitis, and major depression (20 CFR 416.920(c)).

3. The claimant does not have an impaimrent or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that he must work in proximity to a bathroom and is limited to routine, unskilled work involving limited contact with the public or co-workers.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on April 24, 1957 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 9, 2009, the date the application was filed (20 CFR 416.920(g)).

## Standard of Review

On judicial review, the court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g); 1383(c)(3); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). The examination for substantial

evidence "'is not merely a quantitative exercise.'" *Lozada v. Barnhart*, 331 F. Supp. 2d 325, 328 (E.D. Pa. 2004) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

To facilitate meaningful judicial review, the ALJ must explain clearly and fully the basis of her decision. *Barren Creek Coal Co. v. Witmer*, 111 F.3d 352, 356 (3d Cir. 1997) (quoting *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)). The ALJ must discuss what evidence supports her determination, what evidence she rejected, and her reasons for accepting some evidence while rejecting other evidence. *Cotter*, 642 F.2d at 705.

**Sequential Evaluation**

To determine whether a claimant is disabled, the ALJ must apply the familiar five-step sequential process prescribed in the Social Security regulations, 20 C.F.R. § 404.1520(a)(4); *Phillips v. Astrue*, 671 F.3d 699, 701 (8th Cir. 2012); *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). In the first four steps, the claimant must make a *prima facie* showing of disability by demonstrating that he has a severe impairment that prevents him from performing work he has done in the past. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). At step one, the claimant must demonstrate that he is not engaged in gainful employment. *Id.* At step two, the claimant must show that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At the third step, the ALJ determines whether the claimant's impairment or impairments are equal to one of the impairments listed in an appendix to the social security regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. The Commissioner has decided that those

impairments listed are so severe that they conclusively render a claimant disabled. 20 C.F.R. § 404.1520(d); *Plummer*, 186 F.3d at 428. Thus, if the claimant meets his burden at step three by showing that he has a listed impairment or impairments, he is *per se* disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Rutherford*, 399 F.3d at 551.

If the claimant's impairment does not equal one of the listed impairments, the inquiry proceeds to step four where the claimant must show that the impairment prevents him from performing his past relevant work. *Rutherford*, 399 F.3d at 551. Once the claimant has established that he cannot return to his previous work, the process moves to the fifth step. *Id.* There, the Commissioner has the burden "to demonstrate that the claimant can perform a significant number of other jobs in the national economy." *Hoopai*, 499 F.3d at 1074 (citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002); *see also Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985) (citing 42 U.S.C. § 423(d)(2)(A) (1982); *Rossi v. Califano*, 602 F.2d 55, 58 (3d Cir. 1979)). If the Commissioner meets that burden, the ALJ must find that the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In this case, the ALJ found that Martinez met his burden at steps one and two. (R. 22-23). At step three, she determined that Martinez did not have an impairment which met or equaled one of the impairments identified in Appendix 1 to Subpart P of Part 404 of the regulations. 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Proceeding to step four, the ALJ found that Martinez has the residual functional capacity to perform medium work, provided the work is "in proximity to a bathroom and is limited to routine, unskilled work involving limited contact with the public or co-workers." (R.

24). Given this finding and considering the claimant's age, education, lack of work history, and residual functional capacity, the ALJ concluded that a significant number of jobs existed in the economy which Martinez could perform. (R. 28). Thus, the ALJ found Martinez was not disabled under the Act. (R. 28).

## Discussion

### The ALJ's Evaluation of the Medical Opinion Evidence

Martinez contends the ALJ's decision is not supported by substantial evidence because she improperly substituted her own judgment in place of the medical evidence, particularly of his treating physician. We agree.

A reviewing court has no fact finding role in evaluating the administrative record and may not weigh the evidence or substitute its own conclusion for that of the ALJ. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). It is bound by an ALJ's findings if they are supported by substantial evidence in the record. *Plummer*, 186 F.3d at 427. Consequently, if an ALJ's decision is not supported by substantial evidence, we may remand. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (citing *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). The ALJ must explicitly analyze all relevant evidence in the record and cannot disregard evidence without an adequate explanation. *Reefer*, 326 F.3d at 381-82; *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *see also Coleman v. Chater*, 1997 WL 452192, *3 (D. N.J. July 22, 1997).

The opinions of a treating physician are entitled to substantial and, in some cases, controlling weight. *Johnson v. Comm'r of Social Security*, 529 F.3d 198, 202 (3d Cir. 2008) (citing *Fargnoli*, 247 F.3d at 43). The treating physician's opinions should be

given "great weight, 'especially when the opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Brownawell v. Comm'r of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Conversely, the opinions of a physician who has never examined the patient are not as probative as those of one who had treated or examined him. *Morales*, 225 F.3d at 317 (citation omitted).

Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose to accept the latter so long as she does not ignore the findings that support the treating physician's opinion and there is contradictory medical evidence. *Morales*, 225 F.3d at 317. When she rejects the treating physician's opinion, the ALJ must adequately explain her reasons for doing so. *Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000). An ALJ cannot disregard the medical opinion of a treating physician based solely on her own impressions and her evaluation of the claimant's credibility. *Morales*, 225 F.3d at 318 ("Although an ALJ may consider his own observations of the claimant and this Court cannot second-guess the ALJ's credibility judgments, they alone do not carry the day and override the medical opinion of a treating physician that is supported by the record."). In other words, the ALJ may not substitute her lay opinion for the medical opinion of a treating physician, especially in cases involving mental disabilities. *Id.* at 319.

In this case, the ALJ had three different psychological assessment opinions from three different psychologists. Dr. Daniel A. Schwarz, the SSA-appointed psychologist who personally evaluated Martinez, and Dr. Kenneth Draper, Martinez's treating psychiatrist, concluded that Martinez had marked and extreme limitations as a result of

7

his mental impairments. (R. 409, 270). Dr. Schwarz determined that Martinez had a "borderline ability to understand, retain, and follow instructions . . . [and] to sustain attention to perform simple repetitive tasks" and "a below average ability" to interact with fellow workers and "to tolerate stress and pressures associated with day-to-day activities." (R. 274). Dr. Draper, Martinez's treating psychiatrist at Asociacion de Puertorriquenos en Marcha, Inc. ("APM"), opined that Martinez had "marked" to "extreme" limitations as a result of his impairments that prevent him from doing work-related activities on a day-to-day basis in a regular work setting. (R. 410-12).

By contrast, Dr. Dennis C. Gold, a state agency doctor who only reviewed the records and did not personally examine Martinez, reported no extreme limitations and only marked limitations in the ability to understand, remember and carry out detailed instructions. (R. 298). In his report, Dr. Gold concluded that Martinez was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." (R. 300).[2]

The ALJ accorded "significant weight" to Dr. Gold's assessments, even though he had not examined Martinez. (R. 298). She accorded little or no weight to the opinions of Dr. Schwarz and Dr. Draper, which contradicted Dr. Gold's opinion. (R. 409, 270). The ALJ discounted Dr. Draper's assessment because she concluded that it was "not consistent with [Dr. Draper's] recent treatment records" and was "not consistent with [Martinez's] GAF of 55 assessed on intake." (R. 26-27).[3] To justify giving little

---

[2] Dr. Gold also concluded that Martinez could perform simple, routine, repetitive work in a stable environment. He could make simple decisions and carry out "very short and simple instructions." (R. 27).

[3] The SSA has expressly declined to endorse the GAF scale, finding that it "does not have a direct correlation to the severity requirements of the Social Security mental disorder listings." *Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d Cir. 2009) (citing 65 Fed.Reg. 50764–65 (2000)). Like other evidence, a GAF score may be accorded little or no weight depending upon its consistency with the other relevant

8

credence to the opinions of Dr. Schwarz, who had personally evaluated Martinez, the ALJ characterized Dr. Schwarz's assessments as "from a one-time examining source not a treating physician." (R. 26). Yet, she gave significant weight to a physician who never examined or treated Martinez.

The ALJ failed to analyze how Drs. Draper and Schwarz's opinions were inconsistent with the record. For example, the APM treatment entries and progress notes, recorded by Dr. Draper and Gladys Zayas, M.A., an APM psychotherapist,[4] contain various notations which demonstrate Martinez's continuing functional problems. The entries in the medical record are as follows:

> December 3, 2007 – "aggression," "anger," "anxiety," "recurring thoughts," "sleeping problems," "depression," "feelings of loneliness [and] apathy," "social isolation," "disturbed sleep," "persistent sense of loss [and] bereavement." (R. 215, 241).
>
> December 4, 2007 – "sad, depressed without reason." (R. 379).
>
> December 20, 2007 – "fearful," "very depressed, no[t] talkative." (R. 378).
>
> January 9, 2008 – "quiet and depressed." (R. 375).
>
> January 19, 2008 – "anxious," "depressive," "unimproved," "restless[]." (R. 247).
>
> March 25, 2008 – "sad, depressed," "anxious." (R. 368).
>
> May 30, 2008 – "patient is becoming [increasingly] frustrated," "worried," "[somatic] preoccupations." (R. 251).
>
> September 5, 2008 – "still having . . . depressed episode[s] due to medical condition," "sad, depressed mood due to the constant pain." (R. 360).

---

evidence in the record. *Torres v. Barnhart*, 139 F. App'x 411, 415 (3d Cir. 2005). Here, the ALJ relied on the GAF score to reject Dr. Draper's assessment, stating a GAF score of 55 was inconsistent with his assessment.

[4] Psychotherapists are considered an "other source." 20 C.F.R. 404.1513(d) ("Other sources include, but are not limited to ... therapists."). Because so called "other sources" have taken on a greater role in treating and evaluating patients, their opinions are deemed "important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06–03p, 2006 WL 2263437, at *45596. Thus, "other sources" medical evidence is evaluated using the same criteria by which the ALJ weighs "acceptable medical source" evidence.

September 29, 2008 – "sad mood, anxious, depressed due to constantly [sic] worries and pain of his neck and back." (R. 359).

November 3, 2009 – "does not participate in social activities and can't complete his housechores as well," "depressed due to back pain, lack of energy." (R. 356).

December 13, 2009 – "depressed mood and affect, tired, anxious due to pain." (R. 352).

February 17, 2009 – "uncooperative, quiet and depressed mood." (R. 351).

March 14, 2009 – "anxious, anguish due to pain." (R. 350).

March 17, 2009 – "tired," "anxious," "needing to move from side to side." (R. 349).

May 8, 2009 – "tired, lack of energy," "depressed." (R. 347).

May 12, 2009 – "backache is producing a high level of depression," "can't do anything at home," "tired, sad affect due to backache," "can't sit down for long period of time," "anxious." (R. 346).

June 3, 2009 – "depressed due to pain," "tired," "lack of energy," "anxious." (R. 345).

July 9, 2009 – "very depressed due to his back problem," "can't sleep well and do anything at home," "everytime that he tries to lift anything feels a lot of pain which makes him depressed." (R. 343).

July 30, 2009 – "still suffering of depression and insomnia," "limited coping skill due to constantly [sic] pain," "sad and depressed mood due to the pain." (R. 342).

September 1, 2009 – "seems unhealthy, tired, lack of energy," "can't sleep well due to backache and depression symptoms." (R. 339).

October 9, 2009 – "upset, tired, sleepy, poor cooperation," "seems depressed." (R. 337).

November 10, 2009 – "upset, depressed," "complains about his backache that cause him depression and anxiety." (R. 336).

December 10, 2009 – "seems tired, lack of energy," "shows poor communication." (R. 334).

January 20, 2010 – "upset, depressed mood, tired and can't stay sit or stand for long period [sic] of time." (R. 332).

February 8, 2010 – "depressed, anxious and pain." (R. 331).

March 22, 2010 – "seems unhealthy, tired (lack of sleep), sad mood." (R. 328).

April 9, 2010 – "poor social or recreational activities due to poor motivation, lack of energy," "depressed mood." (R. 327).

June 11, 2010 – "argumentative and complaining about his back pain and insomnia problem." (R. 324).

July 8, 2010 – "depressed and sad," "poor communication and cooperation." (R. 323).

August 14, 2010 – "quiet, flat affect and poor communication." (R. 320).

The ALJ did not address these evaluations and descriptions even though they are inconsistent with Dr. Gold's assessment. She also did not explain how Dr. Draper's and Dr. Schwarz's assessments were inconsistent with the record, especially in light of the APM entries which appear to support those assessments. She, instead, described Martinez as a "stable," "alert," and "cooperative" patient with a "lack of interest in treatment and therapy" based on one mental state evaluation completed on October 18, 2010. (R. 26).

In *Morales v. Apfel*, the Court of Appeals explained:

> The relevant inquiry with regard to a disability determination is whether the claimant's condition prevents him from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). For a person . . . who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic. Dr. Erro's observations that [plaintiff] is "stable and well controlled with medication" during treatment does not support the medical conclusion that [plaintiff] can return to work. Dr. Erro, despite his notation, opined that [plaintiff]'s mental impairment rendered him markedly limited in a number of relevant work-related activities. Other information in the treatment records supports this opinion. Thus, Dr. Erro's opinion that [plaintiff]'s ability to function is seriously impaired or nonexistent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting.

225 F.3d at 319.

Here, the ALJ's evaluation of Dr. Draper's assessment suffers the same flaw. Dr. Draper's latest observation that Martinez was alert and cooperative during

treatment[5] does not contradict or undermine his medical opinion that Martinez has marked and extreme limitations that prevent him from doing work-related activities on a day-to-day basis in a regular work setting. (R. 410) ("Patient has difficulty dealing with stress. He cannot concentrate well, is very distracted and also impulsive."). *See Morales*, 225 F.3d at 319.

Significantly, although the ALJ gave little weight to Dr. Schwarz's opinion because he was a "one-time examining source" and "not a treating physician," she ultimately relied on the opinion of Dr. Gold who never examined Martinez. Martinez asserts that at the time Dr. Gold prepared his Psychiatric Review and Analysis, "the evidentiary file was fragmentary, including only [five] of what would ultimately amount to seventeen separate medical . . . exhibits, and including only the first of the four separate APM submissions." Mot. at 17. Under these circumstances, the ALJ had a duty to explain sufficiently why she chose to accord significant weight to Dr. Gold's assessment while disregarding the opinions of two examining sources, who had the benefit of complete APM medical records.

Because she failed to explicitly consider and explain the weight given to all the medical evidence in the record, the ALJ's conclusions are not supported by substantial evidence. *See Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. and Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000); *Plummer*, 186 F.3d at 429; *Cotter*, 642 F.2d at 705. For this reason, we shall remand the case for development of the record, particularly for proper consideration and evaluation of all the medical evidence.

---

[5] (R. 420).

## The ALJ's Treatment of the Claimant's Limitations at Steps 3-5

After determining that Martinez had multiple severe impairments, the ALJ evaluated each impairment separately, concluding that none of Martinez's impairments meets or medically equals the Listings. (R. 23); 20 C.F.R. Part 404, Subpart P, App. 1. The ALJ proceeded to step four, determining that Martinez had residual functional capacity "to perform medium work" subject to various restrictions.

The Listings identify impairments which are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1525, 416.925. Pursuant to the regulations, if a claimant has an impairment which meets the duration requirement and meets or medically equals a listed impairment, the claimant is deemed disabled without considering his age, education, and work experience. *Id.* §§ 404.1520(d), 416.920(d). Stated differently, the listed impairments are presumed severe enough by the SSA to render one disabled. *See Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

Significantly, a claimant may still be considered disabled if he does not have a listed impairment. The Commissioner "will consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. Thus, the ALJ must evaluate the cumulative effect of the claimant's multiple ailments at step three of the disability-claim analysis. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504–05 (3d Cir. 2009).

In this case, Martinez alleged impairments of the spine, prostatitis, and mental impairment. The ALJ analyzed each impairment individually. She found that: (1)

13

Martinez's spinal impairments were not "of sufficient severity . . . to meet or equal the impairments described in section 1.04 of Appendix 1 dealing with disorders of the spine"; (2) his prostatitis did not "meet or equal the severity of the impairments described in section 6.01 of Appendix 1 dealing with disorders of genitourinary system" because it was "not one of the impairments described in that section;" and (3) his mental impairment did not "meet or medically equal the criteria of listing 12.04." (R. 23).

Absent from the decision is any discussion of the ALJ's having combined any of Martinez's three ailments for the purpose of assessing how the combination measures up to the Listings. Instead of combining Martinez's impairments, she appeared to segregate the effects of his mental impairment from his physical impairment. In other words, although she explained why Martinez's impairments do not meet Appendix 1 Listings individually, the ALJ failed to combine the medical impairments and compare them to analogous Appendix 1 Listings. While the ALJ may have considered Martinez's ailments as a whole when determining his residual functional capacity at step four of the analysis, 20 C.F.R. § 416.923 applies to step three because it refers to the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Accordingly, the ALJ's analysis as to Martinez's individual impairments without a discussion of why the combined impairments did not meet or equal a listing fell short of what is required by the SSA regulations. *See* 20 C.F.R. § 416.923.

## Conclusion

In light of the need for analysis of all the evidence,[6] we shall remand to the Commissioner for further proceedings consistent with this memorandum opinion pursuant to the fourth sentence of 42 U.S.C. § 405(g).

---

[6] Because we are remanding the case, we do not address the plaintiff's remaining two issues.